IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

WOODLAWN COMMUNITY DEVELOPMENT
CORPORATION,

Plaintiff,

v.

CHICAGO JOURNEYMEN PLUMBERS'
LOCAL UNION 130, U.A.,

Defendant.

NOV 7 2006

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

Case No. 05 C 6319

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' Cross-Motions
for Summary Judgment. Plaintiff Woodlawn Community Development
Corporation (hereinafter, "WCDC") moves to vacate the August 5,
2005 Arbitration Award (the "Award"). Defendant Chicago Journeymen
Plumber's Local Union 130, U.A. (hereinafter, the "Union") cross-
moves to enforce the Award. For the following reasons, WCDC's
Motion **is denied** and the Union's Motion **is granted**.

### I. BACKGROUND

#### A. Factual Background

WCDC is a non-profit housing management company that took over
as manager at several Chicago Housing Authority (the "CHA")
development sites in June 1999. WCDC assumed CHA's collective
bargaining agreement (the "CBA") with the Union. On November 22,
1999, WCDC hired George Graves a plumber and assigned him to work

at CHA's Wells Homes Development. He was later transferred to Washington Park Homes.

After notifying Graves in December of its intention to do so, WCDC reduced his hours from full-time to part-time on January 1, 2003. Graves requested to bump a less senior plumber in order to maintain full-time hours, but WCDC denied his request. In late December 2002 or early January 2003, Graves informed his Union Business Representative John Kyles ("Kyles") that his hours were going to be reduced to part-time. Graves claims that during 2002 and 2003 he was in discussions with WCDC representatives and was informed the situation would be handled to his benefit. Graves testified at the arbitration hearing that the WCDC representatives requested that he not involve his union and that they would take care of him.

On October 23, 2003, WCDC restored Graves' hours to full time. However, his attempts to resolve his back-pay issues with WCDC failed. Graves filed grievances on November 14, 2003 and December 12, 2003 seeking to recover the wages he lost as a result of the reduction of hours. WCDC received the grievances but did not respond until it received the Union's arbitration demand on January 26, 2005.

Kyles spoke with WCDC Vice President Carol Millison ("Millison") in the Spring of 2004 concerning Graves' back-pay and various promises by WCDC representatives that Graves would be made whole. Millison stated that she was not aware of the matter. The

- 2 -

Union argues that by speaking with Millison, Kyles was attempting to have the grievances answered. Following the conversation, Kyles believed that Millison would speak with her staff concerning the promises made to Graves. In September 2004, Kyles asked WCDC Vice President Veronica Black ("Black") if she had done anything concerning the grievance. Black stated that she was new to the job and required the relevant documentation.

## B. The Collective Bargaining Agreement

Section 12.1 of the CBA, entitled "Grievance Appeal and Review" sets forth the process for pursuing grievances and arbitration and includes time limits for such filings. Section 12.2, entitled "Arbitration," states that the Union may seek arbitration within ten working days of receipts of the employer's decision concerning grievances. It further provides that the Union may seek Arbitration of any unresolved dispute arising under the CBA, if informal attempts at resolution prove ineffective. Section 12.5, "Processing and Time Limits" states that "any grievance not initiated or taken to the next step within the time limits specified herein will be considered settled on the basis of the last answer by management." It also states that "[t]he time limits specified in this Article . . . may be extended or waived by mutual agreement."

## C. Arbitration Award

On January 26, 2005, the Union demanded arbitration stating "[s]ince informal settlement attempts have not produced a

- 3 -

resolution to these two grievances, Local 130 … demands immediate arbitration. . . ." On March 11, 2005, WCDC responded by letter that the grievances lacked merit. On April 4, 2005, WCDC wrote a second letter stating that the "grievance is untimely because arbitration was not sought on his behalf in accordance with the time frame [in the] Agreement."

The Arbitrator entered his written Award on August 5, 2005. The Award states that there were two issues to be decided: (1) whether the grievance was arbitrable and (2) what remedy, if any, was due to Graves. Whether the grievance was arbitrable depended on whether the grievance and written demand for arbitration were timely filed under the CBA.

The Arbitrator considered the timeliness of the grievance and found that WCDC had not responded to Graves' grievance when the arbitration demand was filed. He found that the March 2005 letter asserted lack of merit and the April 2005 letter asserted untimeliness of the demand for arbitration. He also found that prior to the arbitration hearing, WCDC had never asserted that the grievance itself was untimely. Thus, he concluded, because WCDC had waited too long to raise the timeliness of the grievance, it waived that argument. The Arbitrator held that the timeliness of the grievance cannot be asserted for the first time at the arbitration hearing.

With respect to the arbitration demand, the Arbitrator considered the ten-day period described in Section 12.2 of the CBA.

- 4 -

He concluded that in order for the ten-day period to run, the employer must respond to the grievance because a union cannot demand arbitration until it receives such a response.

In addition, the Arbitrator found that Kyles' attempts at resolution were informal and Section 12.2 does not provide a time period for seeking arbitration where informal attempts at resolution are being made. The Arbitrator concluded that Kyles' contacts with WCDC in 2004 regarding the grievance constituted "informal attempts at resolution" under the CBA. The Award states, it is "undisputed that Mr. Kyles attempted to get [WCDC] to respond to the grievance through his contacts with Ms. Millison and Ms. Black during 2004, but those attempts were unavailing." He further concluded that the CBA did not establish a specific time limit for demanding arbitration following informal attempts at resolution. Thus, the arbitration demand was not untimely. The Arbitrator recognized that laches is still a guard against stale arbitration demands.

## II.  **ANALYSIS**

### A.  **Summary Judgment**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that no genuine issue of

material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party presents a *prima facie* case showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256-57. All reasonable inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). When cross-motions are filed, we apply the same standard to each motion. *Stimsonite Corp. v. NightLine Markers, Inc.*, 33 F. Supp.2d, 703, 705 (N.D. Ill. 1999).

## B. Arbitrator Exceeded His Authority

The scope of judicial review of labor arbitration decisions is extremely narrow. *Amax Coal Co. V. United Mine Workers of America, Intern. Union*, 92 F.3d 571, 575 (7th Cir. 1996). A court may set aside an arbitration award if the arbitrator exceeds the scope of his authority by reading essential provisions out of the collective bargaining agreement or by injecting his own brand of policy into the award. *Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC*, 768 F.2d 180, 184-85 (7th Cir. 1985), *cert. denied*, 475 U.S. 1010 (1986). Thus, the court has the power to vacate an award if the arbitrator's interpretation shows a manifest disregard of the

- 6 -

language of the collective bargaining agreement and the award is totally unsupported by the principles of the contract. *Jays Foods, L.L.C. v. Chemical & Allied Product Workers' Union, Local 20*, No. 97 C 6227, 1998 WL 265098, at *4 (N.D. Ill. May 13, 1998).

### 1. *Waiver of Objection to Untimely Grievance*

WCDC argues that the arbitrator exceeded his authority because he ignored the contract language when he found that WCDC waived its objection to Graves' untimely grievance. WCDC contends that the only provision in the CBA for extending time limits for filing grievances is Section 12.5, which states that the processing of a grievance may be extended or waived by mutual agreement. According to WCDC, there was no basis for the Arbitrator to find waiver and the Arbitrator's failure to mention Section 12.5 in his opinion shows he did not apply the contract to the grievance.

Second, WCDC argues that the Arbitrator effectively rewrote the CBA to provide that WCDC's right to object to an untimely grievance is forfeited unless the WCDC makes its objection prior to the arbitration hearing. Finally, WCDC argues that the Arbitrator impermissibly considered conversations between the parties in determining the waiver issue. The CBA does not provide that communications occurring after the expiration of the time limits can excuse the untimely filing of a grievance unless the parties mutually agreed to do so.

The Union argues that any procedural issues concerning the timeliness of the filing of the grievance are left for the

- 7 -

Arbitrator to decide. *See Beer, Soft Drink, Water, Fruit Juice, etc., Local Union No. 744 v. Metropolitan Distributors, Inc.,* 763 F.2d 300, 303 (7th Cir. 1985). Further, the Union argues that although the Arbitrator did not explicitly refer to Section 12.5 of the CBA in finding waiver, he did include the language of Section 12.5 in the Award. He stated that in reaching his decision, he interpreted the contract and clearly indicated the provisions he considered.

Procedural questions concerning the arbitration process itself are to be decided by the arbitrator. When a subject matter of a dispute is covered by the CBA, any procedural questions, "such as whether the arbitration procedures were properly followed — are reserved for the arbitrator." *R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers, Local Union 150, AFL-CIO,* 335 F.3d 643, 650-51 (7th Cir. 2003), citing *Beer, Soft Drink, Water and Fruit Juice,* 763 F.2d at 303; *see also Office & Professional Employees Intern. Union, Local 28 v. United Credit Union,* No. 97 C 4162, 1997 WL 797679, at *1 ("Generally, CBAs have procedural requirements that have to be met before the duty to arbitrate arises. Such procedural issues are reserved for arbitrators to resolve.")(citation omitted). An issue concerning procedural arbitrability arises when one of the parties argues that the party seeking arbitration failed to exhaust the grievance procedure provided by the CBA. *Office & Professional Employees Intern. Union,* 1997 WL 797679, at *2 ("Only the arbitrator can

- 8 -

determine whether Plaintiff followed the grievance procedure or is excused from following this procedure.")(citation omitted).

Whether WCDC waived its objection to the timeliness of the grievance is a procedural question that is reserved for the Arbitrator and should be left undisturbed by a reviewing court. *Shopmen's Local 539 of Intern. Ass'n of Bridge, Structural and Ornamental Iron Workers, AFL-CIO v. Mosher Steel Co.*, 796 F.2d 1361, 1365 (11th Cir. 1986)(affirming arbitrator's determination that conduct of company amounted to a waiver of right to complain that a grievance was untimely); *see also Automobile Mechanics' Local No. 701, Intern. Assoc. Of Machinists and Aerospace Workers, AFL-CIO v. Auto Truck, Inc.*, No. 94 C 7564, 1996 WL 556961, at *6. WCDC, however, argues that the Arbitrator's decision was not "grounded" in the CBA and thus should be vacated. In reaching his decision on waiver, the Arbitrator considered the conduct of the parties, as well as the authority cited, including Sections 12.2 and 12.5. WCDC failed to raise the timeliness issue and proceeded toward arbitration, requiring the Union to prepare its evidence without any knowledge of the issue of untimeliness of the grievance. Whether or not this fact amounted to waiver is a question for the Arbitrator. *Shopmen's Local 539*, 796 F.2d at 1365. Further, the Arbitrator's decision that WCDC waived its objection to the timeliness of the grievance was "in some rational manner [ ] derived from the collective bargaining agreement" because he considered the CBA sections cited by both parties on the

issue. *National Wrecking Co. v. International Broth. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993); *see also Automobile Mechanics' Local No. 701*, No. 94 C 7564, 1996 WL 556961, at *5.

## 2. Demand for Arbitration was Not Timely

The Arbitrator ruled that Section 12.2 "on its face" requires a decision from an Employer to trigger the running of the ten-day period." WCDC argues that Section 12.2 does not condition its time limit on a decision by the employer. Further, Section 12.5 provides the remedy if an employer fails to respond within the applicable time period. Thus, WCDC argues that the Arbitrator impermissibly added to the CBA by reading in the requirement of a decision to trigger the ten day period. Second, the arbitrator found that WCDC was engaged in informal attempts at resolution, which were not subject to the time limits contained in the CBA. WCDC argues that such an interpretation is at odds with Section 12.1 of the CBA providing that informal resolution of grievances should take place with the employee's immediate supervisor before a formal grievance is filed. Again, WCDC argues that the arbitrator's interpretation impermissibly added to the CBA and effectively nullified the filing time limit in Section 12.2.

The Union contends that the timeliness of the arbitration demand is a procedural issue for the arbitrator to decide. Further, the Union argues that under the law unless the arbitrator ignores contractual language he concedes to be binding, a court cannot vacate the award. *International Union of Operating*

- 10 -

*Engineers, Local 139, AFL-CIO v. J.H. Findorff & Son, Inc.*, 393
F.3d 742, 747 (7th Cir. 2004). The Union argues that the
Arbitrator did not ignore contractual language.

The Arbitrator reached his decision on the timeliness of the
arbitration demand by interpretation of Section 12.2 of the CBA.
Section 12.2 provides the time-line for an employer to respond to
a grievance. The Arbitrator found that in order to trigger the
running of the time period, the CBA required receipt of a response
from the employer. In addition, the Arbitrator found that the
second sentence of Section 12.2, which provided that the Union "may
seek arbitration of any unresolved dispute arising under this
Collective Bargaining Agreement, if informal attempts at resolution
prove ineffective," did not contain a time limit for arbitration
demands in the case of informal attempts at resolution. The
Arbitrator found that because WCDC never responded to the
grievance, the Union's efforts constituted informal attempts at
resolution. Thus, the Union was not subject to a time limit for
seeking arbitration when its informal attempts at resolution
failed.

The role of a reviewing court is to determine whether the
arbitrator's award draws its essence from the CBA, and only if
there is no possible interpretative route to the award, so that a
noncontractual basis can be inferred, may the award be set aside.
*Ganton Technologies, Inc. v. International Union, United Auto.,
Aerospace and Agricultural Implement Workers of America, U.A.W.,*

- 11 -

*Local 627*, 358 F.3d 459, 462 (7th Cir. 2004)(citations omitted). In this case, the arbitrator's award draws its essence from the CBA. Contrary to WCDC's assertions, the arbitrator based his conclusions on the plain language of the CBA and clearly laid out his interpretative route. Thus, the Award will not be set aside.

### III. **CONCLUSION**

For the reasons stated herein, WCDC's Motion for Summary Judgment **is denied.** The Union's Motion for Summary Judgment **is granted.**

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: November 7, 2006

- 12 -